Filed 10/6/15  P. v. Mora CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JOSE RUBEN MORA, <br><br> Defendant and Appellant. | F069192 <br><br> (Super. Ct. No. VCF282556) <br><br><br> **OPINION** |

-ooOoo-

**THE COURT**<sup>*</sup>

APPEAL from a judgment of the Superior Court of Tulare County.  Gary L. Paden, Judge.

Eleanor M. Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

<sup>*</sup>       Before Gomes, Acting P.J., Detjen, J. and Franson, J.

A jury found Jose Ruben Mora guilty of residential burglary. Mora was sentenced to 13 years in prison as the result of two enhancements found true by the trial court in a bifurcated proceeding.

Appellate counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 asserting that after reviewing the record, she could not identify any arguable issues in this case. By letter dated September 3, 2014, we invited Mora to present any issues he wished us to consider. Mora did not respond to our invitation. After thorough review of the record, we agree with appellate counsel that there are no arguable issues in this case and therefore we affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

The sole count in the information charged Mora with residential burglary. (Pen. Code, § 459.)[1] The information also alleged as enhancements that Mora had suffered (1) a prior conviction that constituted a strike within the meaning of section 667, subdivisions (b) through (i), and (2) a prior serious felony conviction within the meaning of section 667, subdivision (a)(1).

The prosecution's case consisted of four witnesses. The victim, Amelia Agtang, met Mora through a friend, with the ultimate goal being to enter into a dating relationship. The relationship did not progress, in part because Agtang became uncomfortable with Mora's behavior. When Agtang told Mora she no longer wished to see him, he became upset. Approximately two weeks later, someone broke into her home and stole a television, a game console, and some jewelry. Agtang estimated the total loss at $1,250.

Lorenzo is Mora's nephew. On the night of the burglary, Mora asked Lorenzo to go for a walk with him. Eventually, Mora told Lorenzo they were going to pick up some items from Mora's girlfriend's house. Lorenzo waited on the sidewalk while Mora

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

walked up to a house. When Mora returned, he was carrying a television and a backpack. A game console was inside the backpack. The two started walking home with the items.

On the way home they were stopped by Visalia Police Officer Steve Howerton. Howerton did not confiscate the television or the game console, but he did remove some items from the backpack that Lorenzo had not previously noticed. After they were released by Howerton, Lorenzo went home and Mora left in a different direction. Less than an hour later, the police showed up at Lorenzo's home to ask him some questions.

Visalia Police Officer Thomas Higgins responded to Agtang's home on the night in question. It appeared a television was missing, and the back bedroom had "been gone through" by someone.

Howerton testified he was on patrol on the night in question when he observed Mora and Lorenzo walking down the street carrying a television. Howerton, suspicious of the scene, stopped Mora and Lorenzo. Howerton obtained the serial number of the television and reported it to the dispatch center. At that time the television had not been reported as stolen.

Lorenzo was carrying a backpack. Howerton located some women's jewelry inside the backpack. In the main compartment of the backpack was a game console. The game console had not been reported stolen. Lorenzo told Howerton that Mora had asked him to go for a walk. When they arrived at the area where Agtang lived, Mora instructed Lorenzo to wait on the curb. A short while later Mora returned with the television and backpack. Lorenzo denied asking Mora any questions about the items. Howerton retained the jewelry for safekeeping, but otherwise allowed Mora and Lorenzo to depart. Howerton did not find a purse in Mora's or Lorenzo's possession.

Approximately one hour later, Howerton received a phone call from Higgins. Howerton proceeded to Agtang's home. Agtang identified her jewelry.

The jury found Mora guilty of first degree burglary. In a bifurcated trial, the trial court found true the allegations that Mora had suffered a prior strike conviction and a

prior serious felony conviction. Mora was sentenced to a midterm sentence of four years for the first degree burglary conviction, doubled because of the strike prior, and enhanced by five years because of the prior serious felony conviction, for a total prison term of 13 years.

## DISCUSSION

After a thorough review of the file, we agree with appellate counsel that there are no arguable issues in this case. The evidence of Mora's guilt was overwhelming, the evidence was straightforward, with no serious evidentiary disputes, the jury was properly instructed, and Mora was sentenced to a midterm sentence.

The only disputed evidentiary issue raised at trial related to Facebook postings allegedly made by Agtang. Defense counsel suggested that Agtang had used several different names on Facebook, and that she changed her marital status regularly, often falsely claiming she was married. Defense counsel argued the apparently false information posted by Agtang on Facebook damaged her credibility. Defense counsel successfully introduced during cross-examination the fact that Agtang utilized several different names on Facebook. The trial court, however, limited the questioning in this area. The court acted well within its discretion in doing so.

We begin by focusing on the only issue in the trial. Mora was in no position to suggest he had not taken the items from Agtang's home since Lorenzo confirmed Mora had done so, and Mora was caught with the items by Howerton as Mora walked home from Agtang's home. Instead, Mora's defense at trial was based on the assertion that the items he had taken from Agtang's home belonged to him, not Agtang. From discussions held outside the presence of the jury, it appears this was the explanation given by Mora to Howerton when Mora was walking home with the television.

However, Mora did not testify at trial to explain his claim of ownership. Therefore, the only evidence before the jury regarding ownership of the television and game console was that the items were taken from Agtang's home, and Agtang testified

4.

they were her possessions. Howerton did not testify about Mora's claim of ownership before the jury. Lorenzo, who was a difficult witness, did say at one point that Mora said he was going to "get his stuff," but immediately rephrased to state that Mora said he was going to "[p]ick up stuff." Later, Lorenzo repeated that Mora had told him he was going to get his (Mora's) stuff.

On two of those occasions, Lorenzo volunteered the information when responding to questions that were unrelated to what Mora may have said. The prosecutor was able to clarify on redirect examination that Mora initially did not tell Lorenzo anything about the items he had taken from Agtang's home. Sometime after they returned home, however, Mora claimed he had retrieved his "stuff." Mora did not present any receipts for the items or other indicia of ownership, nor did anyone testify they had ever seen the items in Mora's possession, including Lorenzo, with whom Mora was living at the time.[2] Since the "relationship" between Agtang and Mora lasted only approximately two months, the failure to produce such evidence rendered Lorenzo's statements devoid of evidentiary value. Finally, these statements failed to explain why Mora took women's jewelry from Agtang's home, why he searched her bedroom when the television and game console were in the living area, and why he decided to retrieve these items at 11:00 p.m. when Agtang was not at home.

With this focus on the issue at trial, it is obvious that whatever Agtang may have posted on her Facebook page had very little probative value. Ignoring the numerous foundational issues such postings present, it is virtually impossible to reach any conclusions about a person's veracity from postings made on the Internet. Such postings are not made under penalty of perjury, are oftentimes made in jest, are easily taken out of context, and are not necessarily indicative of one's truthfulness. Simply stated, it is not

---

**2**      It appears Lorenzo was approximately 13 years old at the time of the theft. Accordingly, it would be more accurate to say that Mora lived with Lorenzo and his family.

reasonable to infer that because one may be untruthful in postings on a Facebook page, that person also may be untruthful in all aspects of life. Because such evidence (1) had minimal, if any, probative value to the issue in the case, (2) ran a serious risk of consuming an undue amount of time, and (3) created a distinct possibility of confusing the issues before the jury, the trial court acted well within its discretion in excluding such testimony. (Evid. Code, § 352.)

Even if we were to assume the trial court erred, Mora could not establish any prejudice for the reasons explained above, regardless of the standard of review applied.

## DISPOSITION

The judgment is affirmed.